UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF MICHIGAN

United States of America,

    Plaintiff,

v.                                       Case No. 2:15-cr-20522
                                           18 U.S.C. §2251, 2252A
                                           Hon. Avern Cohn

Matthew David Kuppe,

    Defendant.

_____/

**DEFENDANT MATTHEW KUPPE'S MOTION TO SUPPRESS STATEMENTS OR, IN THE ALTERNATIVE, FOR AN EVIDENTIARY HEARING**

Defendant, Matthew Kuppe ("Kuppe"), through his attorneys, Hertz Schram PC, by Walter J. Piszczatowski, moves this Honorable Court for entry of an order suppressing from evidence, statements obtained from him at the time of his arrest or, in the alternative, for an evidentiary hearing at which it would be the government's burden of proving the admissibility of such statements. The facts and law in support of this motion, are more fully set forth in the attached memorandum.

{H0300309.1}

Defense counsel has sought the concurrence and the relief requested from the Assistant United States Attorney and such concurrence has been denied.

          Respectfully submitted,

          Hertz Schram PC

          /s/ Walter J. Piszczatowski (P27158)
          Attorney for Defendant Matthew Kuppe
          1760 S. Telegraph Rd., Ste. 300
          Bloomfield Hills, MI 48302-0183
          (248) 335-5000 / fax (248) 335-3346
          wallyp@hertzschram.com

UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF MICHIGAN

United States of America,

    Plaintiff,

v.                                          Case No. 2:15-cr-20522
                                                     18 U.S.C. §2251, 2252A

Matthew David Kuppe,              Hon. Avern Cohn

    Defendant.
_____/

### DEFENDANT MATTHEW KUPPE'S MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS STATEMENTS OR, IN THE ALTERNATIVE, FOR AN EVIDENTIARY HEARING

Defendant Matthew Kuppe ("Kuppe") has been informed, and anticipates, that the government will introduce as evidence at trial, some, part, or all of the statements made by him at the time of his arrest. The statements were made during the course of a two hour interrogation which, according to investigative reports, occurred after Kuppe was advised of, and waived, his "Miranda rights." Portions of the interrogation were recorded; other portions, such as the administration of the Miranda rights and Kuppe's purported waiver, are not. What is recorded, however, is Kuppe's request for counsel: "I want, I think I want a lawyer then." Also recorded is the investigative agents' blatant disregard for the request. Kuppe requests this Court to suppress his statements from evidence. In the alternative, he requests the Court to conduct an evidentiary hearing on the matter.

{H0300309.1}

## Statement of Facts

On August 12, 2015, "at approximately 17:30 hours, a State of Michigan Search Warrant was executed at Defendant Matthew Kuppe's home by the West Bloomfield Police Department with the assistance of Homeland Security Investigations ("HSI"), Detroit Special agents."[1]

Kuppe, who was 21 years old at the time, resided in the home with his parents and his 25 year old sister. On that date and time, 10-12 federal and state agents forced entry into the home with guns drawn. They located Kuppe and his mother in the front hallway, forced both to the ground and secured them while the remaining officers conducted a "sweep" of the home. The only other person in the house was defendant's father, Richard Kuppe.

Kuppe was promptly removed from the home by two West Bloomfield Police Officers and Homeland Security Special ("HSI") Agent Chechi ("Chechi"). He was given a form and told that it required his signature. He complied. The form - it turns out- contained written "Miranda rights;" rights that were never explained or explicitly waived. An HSI Report of Investigation, however, states that Kuppe was read his Miranda rights, told he did not have to talk and that by signing the form he was waiving his rights.

---

[1] The language quoted in the background facts of this case are taken from a Department of Homeland Security, ICE, report of investigation.

{H0300309.1}                              2

The report further states that *after* the Miranda warnings were issued, "SA Chechi began recording the interview." It then contains this disclaimer: "not all interview was recorded due to the fact that SA Chechi was not near Kuppe from the beginning of his contact with law enforcement officers, the recorder fell on the ground on several occasions, and as SA Chechi briefly left the interview near the end of the interview."

The interrogation lasted approximately one hour and forty-five minutes. It began on the front porch of Kuppe's home, but he was moved, and it continued in another location at the side of the house. As mentioned, the interrogation of Kuppe was recorded – in part. One such portion was Kuppe's assertion, "I want, I think I want a lawyer then." The request was ignored as if the words were never spoken. The interrogation then proceeded for another hour and a half.

On August 13, 2015, a criminal complaint was issued against Kuppe. The affidavit in support alleges that "after being advised of his rights, Kuppe stated:"

- He is the user of the jcclockerroom@gmail.com.
- He posted nude photographs on WEBSITE A depicting minor prepubescent boys
- He took the pictures he posted on WEBSITE A with his cell phone
- He has received child pornography from other internet users at his email account jcclockerroom@gmail.com
- He provided consent for your Affiant to access jcclockerroom@gmail.com

(Complaint, Dkt #1)

Kuppe anticipates that these, and perhaps additional statements attributable to him, will be offered into evidence at his trial. He requests the Court to enter an order suppressing them from evidence because they were the product of a custodial interrogation in which Kuppe did not knowingly and intelligently waive his Miranda rights and which continued after he specifically requested the assistance of counsel.

### Kuppe Did Not Knowingly and Voluntarily Waive His Miranda Rights

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "[T]he privilege has come rightfully to be recognized in part as an individual's substantive right, a 'right to a private enclave where he may lead a private life. That right is the hallmark of our democracy.'" *Miranda v. Arizona,* 384 U.S. 436, 460 (1966) citing, *United States v. Grunewald,* 233 F.2d 556, 579, 581-582 (Frank, J., dissenting), rev'd, 353 U.S. 391 (1957). "[T]he constitutional foundation underlying the privilege is the respect a government -- state or federal -- must accord to the dignity and integrity of its citizens." *Id.* at 460. As further explained:

> To maintain a "fair state-individual balance," to require the government "to shoulder the entire load," to respect the inviolability of the human personality, our accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth. In sum, the privilege is fulfilled only when the person is guaranteed the right "to remain

> silent unless he chooses to speak in the unfettered exercise of his own will." *Miranda* at 460. (citations omitted)

The Court determined that custodial interrogations have the potential to undermine the Fifth Amendment privilege against self-incrimination by possibly exposing a suspect to physical or psychological coercion. *Miranda* at 448-50. In fact, the Court stressed that "the modern practice of in-custody interrogation is psychologically rather than physically oriented" and examined several of the interrogation practices routinely employed by police in the past, as well as tactics recommended by various police manuals and texts.

Those tactics not only continue to be employed, they were used throughout Kuppe's interrogation. For example, "[o]fficers are told by the manuals that the "principal psychological factor contributing to a successful interrogation is *privacy* -- being alone with the person under interrogation." *Miranda* at 449. Accordingly, Kuppe was immediately removed from the house and separated from his parents. He was taken from the home and interrogated by three officers in a more isolated area. Several times he asked, and was refused, an opportunity to talk to his parents before answering any questions.

The manuals cited in *Miranda* instruct the police "to display an air of confidence in the suspect's guilt and from outward appearance to maintain only an interest in confirming certain details. The guilt of the subject is to be posited as a fact." *Id.* And, that is exactly how Kuppe's interrogation was conducted:

Listen….. so, the pictures that we have of these little kids *we know were taken by you*, okay?  You take a picture with your phone, there's an IP address that's registered to your phone, okay, so when you send those pictures, we can tell where they came from, the phone, okay?  So there's pictures that came back to your phone, your IP address …

…

So *you took that picture*.  That's what I need to talk to you about.  Why did you take that picture?

…

The thing is, Matt, you are tied up to this IP address.  *There is no mistake it's you doing all this.*

…

Yeah, *we know it's you*.  What we do not know is why.  Why did you take these pictures?  Okay?

…

"Okay, *you took these pictures*"

    *Miranda* noted that "[W]hen normal procedures fail to produce the needed result, the police may resort to deceptive stratagems such as giving false legal advice. It is important to keep the subject off balance, for example, by trading on his insecurity about himself or his surroundings. The police then persuade, trick, or cajole him out of exercising his constitutional rights." *Id.* at 455. Kuppe's interrogation was rife with such tactics. He was distraught and emotional and can be heard crying multiple times throughout the ordeal. Several times he sought assurance that he was not going to be arrested. The officers either flatly denied that he would be arrested, or deftly side stepped the issue, or both:

MK:  Because if I say that you're gonna put me in jail

No one, I'm not putting you in jail

If you were gonna go to jail you would already have cuffs on you

…

MK:  If I say yes, you gonna arrest me?

I'm not gonna arrest you

MK:  If I say yes, you're not gonna arrest me?

I'm not…

In *Miranda* the Court succinctly summarized the practiced approach to police interrogations:

> From these representative samples of interrogation techniques, the setting prescribed by the manuals and observed in practice becomes clear. In essence, it is this: To be alone with the subject is essential to prevent distraction and to deprive him of any outside support. The aura of confidence in his guilt undermines his will to resist. He merely confirms the preconceived story the police seek to have him describe. Patience and persistence, at times relentless questioning, are employed. To obtain a confession, the interrogator must "patiently maneuver himself or his quarry into a position from which the desired objective may be attained." *Miranda* at 455.

To guard against such coercion, the Court established a prophylactic mechanism that requires a suspect to receive a warning before custodial interrogation begins.  Before questioning suspects in custody, law enforcement officials must inform suspects, in some manner, that:  (1) they have the right to remain silent; (2) their statements may be used against them at trial; (3) they have

the right to the presence of an attorney during questioning; and (4) if they cannot afford an attorney, one will be appointed for them. *Id.* at 478-79.  The warnings do not have to be given exactly as written in *Miranda*, but law enforcement officials must convey the essential message to the suspects, and procedures must be "at least as effective [as *Miranda* warnings] in apprising accused persons of their right of silence and in assuring continuous opportunity to exercise it." *Id.* at 467.  The *Miranda* warnings insure that a suspect knows of his rights not to talk to the police, to have a lawyer present, and to discontinue talking at any time, as well as insuring that a suspect is apprised that his statements cannot be used to secure his conviction.  *Moran v. Burbine*, 475 U.S. 412, 420 (1986).

    A defendant can waive these rights but *Miranda* requires that the waiver be voluntary, knowing and intelligent. *Miranda*, 384 U.S. at 444.  The government bears the burden of proving the voluntariness of the waiver by a preponderance of the evidence. *Machacek v. Hofbauer,* 213 F.3d 947, 954 (6th Cir. 2000); *North Carolina v. Butler*, 441 U.S. 369, 373, 60 L.Ed.2d 286, 292 (1979).  Every reasonable presumption against waiver must be indulged. *Johnson v. Zerbst*, 304 U.S. 458, 464, (1938).  A waiver must be both voluntary, in the sense that it is a free choice, and made with full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it. *Moran v. Burbine*, 475 U.S. 412, 421, (1986).

Here, Kuppe was subject to a lengthy custodial interrogation absent his knowing and voluntary waiver of his *Miranda* rights.    The government will likely produce a *Miranda* rights form bearing Kuppe's signature, and while the form contains the language that comports with *Miranda's* requirements, it was produced, and Kuppe was required to sign it, in the perfunctory manner one signs a gas receipt rather than a waiver of constitutional protections.

At an evidentiary hearing on the issue the government will not be able to "shoulder the entire load" of establishing a knowing and intelligent waiver. Accordingly, suppression of all statements made by Kuppe in contravention of his privilege against self-incrimination is required.

### Agents Ignored Kuppe's Request for Counsel

"I want, I think I want a lawyer then." This is what Kuppe told his interrogators.  All questioning should have ceased at that point. The Fifth Amendment to the U.S. Constitution guarantees that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Fifth Amendment privilege against compelled self-incrimination includes the right to counsel during custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436 (1966); *See, Berghuis v. Thompkins*, 560 U.S. 370, 130 (2010) (distinguishing between the "*Miranda* right to remain silent and the *Miranda* right to counsel" and noting that "[b]oth protect the privilege against compulsory self-incrimination").

"If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Miranda v. Arizona*, *supra*, 474. "

A bright-line rule exists when the suspect requests counsel: "all questioning must cease and any statement made without having had access to counsel, [do] not amount to a valid waiver and hence [are] inadmissible." *Edwards v. Arizona*, 451 U.S. 477, 484-485 (1981).  In the decades since *Edwards*, the Court has rejected prosecutors' invitations to limit the *Edwards* rule. Instead, the Court has consistently re-affirmed and extended the *Edwards'* rule due to its "centrality" in protecting suspects' Fifth Amendment rights.  *Minnick v. Mississippi,* 498 U.S. 146, 146 (1990) (holding that a suspect's opportunity to consult with an attorney does not open the door to future police-initiated interrogations); *Arizona v. Roberson*, 486 U.S. 675 (1988) (rejecting prosecutors' attempts to make the *Edwards* rule offense-specific).

Here, Kuppe's interrogation began on the front porch of his home.  Agents showed him a number of pictures and told him that they were pictures of "little kids we know were taken by you."  They insisted on an admission and an explanation as to why he took them. Kuppe was emotional.  He was scared and crying and kept asking what was going to happen.  Due to the traffic near the front door (agents and officers going in and out of the house) the interrogating agents decided to move Kuppe to a more isolated area on the side of the house in order to

continue the interrogation without disruption.  Kuppe did not want to move, he wanted to stay on the front porch where he felt more secure.  Regardless, the police took him to the side of the house and while doing so Kuppe expressed concern about the neighbors and being publicly embarrassed.  Chechi told him that they were not going to embarrass him at which point he said he wanted a lawyer.  The exchange occurred as follows:

MK:  …but that's not my house…  I don't want to be publicly….I don't…

Chechi:  We don't want to embarrass you, so we go in the back…  We're not gonna embarrass you, okay?

MK:  …nothing ever happened, nothing ever happened…I think I want to know because even if….I want, I think I want a lawyer then.  I don't feel comfortable saying

Chechi:  Hey Matt..

MK:  anything….

Chechi:  Listen …

MK:  ….  I don't want to go to jail.

Chechi:  …we've been doing these investigations for years and we understand that everybody gonna …….  Okay?  Some people like men, some people like women, some people like everything, including kids, okay?  I don't judge people who like kids, it's just that there's a legal boundary in place.  Okay?

Invocation of the *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Davis v. United States,* 512 U.S. 452, 460 (1994) citing

{H0300309.1}                                                     11

*McNeil* v. *Wisconsin*, 501 U.S. at 178. "I think I want a lawyer then" clearly satisfies that requirement. "An accused … having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards* 451 U.S. at 485-6. "*Edwards* is 'designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* right.'" *Minnick*, 498 U.S. at 151.

    Kuppe's request was clear enough, but it fell on deaf ears. Chechi did not attempt to badger a waiver out of him, she took another tact altogether, she completely ignored the fact that he had just requested a lawyer and changed the subject. In fact she literally interrupted Kuppe instructing him to "Listen" then deflected any further discussion of lawyers with an explanation of their mission. The agents continued the interrogation unabated, stating that they were just there to make sure that he hadn't done anything to any of the kids in the pictures. When pressed to admit that he took the pictures Kuppe asked "if I say yes, are you going to arrest me?" He was told "I am not going to arrest you." Of course, that is exactly what happened but only after Kuppe was extensively interrogated for another hour and a half.

The request was not an ambiguous one. In *Davis v. United States*, 512 U.S. 452, 459 (1994) the Supreme Court stated that the invocation of one's right to counsel must be "unambiguous;" it cannot be "ambiguous or equivocal." Given the strictness of the *Edwards* rule, the Court has given clarity to interrogating officers as to when the rule applies. In *Davis*, *supra,* the Court held that officers must cease all questioning if the suspect's request for counsel is unambiguously or unequivocally invoked. The *Davis* Court fashioned an objective test that "[A]lthough a suspect need not "speak with the discrimination of an Oxford don," *Davis,* at 476 (SOUTER, J., concurring in judgment), he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. *Davis*, 512 U.S. at 459.

In *Davis*, the Court found that the defendant's statement, "maybe I should talk to a lawyer," was not an unambiguous request for counsel.  Other courts have found similar statements such as, "I think I should talk to a lawyer, what do you think?"  *United States v. Delaney*, 443 F. App'x 122 (6th Cir. 2011), "do I need a lawyer?" and "do you think I need a lawyer?"  *United States v. Ogbuehi*, 18 F.3d 807, 813 (9th Cir. 1994), "should I get a lawyer?" and "do I need a lawyer?" *United States v. Kliebert*, 2015 U.S. Dist. LEXIS 118240, *17-18 (E.D. Mich., September 4, 2015), as suffering the same ambiguity as the statement in *Davis*.  In

those cases, the defendants' were not requesting assistance of counsel but advice on whether they should have counsel.

It is completely understandable that investigating agents not be required to advise a suspect on the pros and cons of consulting with an attorney mid interrogation. But, in this case, Kuppe was not asking what he should do; he was telling them what he wanted – a lawyer. He didn't use any "mights," "maybes," or "should I's?." He did not send out mixed signals. Rather, he pointedly stated, "I want, I think I want a lawyer then." His use of the word "think" was not any type of equivocation, but was simply a redundancy stating what he thinks he is going to do and what he is going to do in the same sentence. This is a clear request for counsel by any reasonable construction.[2]

Similar statements have been found to be unambiguous. In *McKinney v. Hoffner*, 215 U.S. Dist. LEXIS 32246, *11-12 (E.D. MI. March 17, 2015) the petitioner's statement to the police "I'd just as soon have an attorney" was found

---

[2] In *Davis,* the Court noted that " when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney," and that that was the procedure followed by the NIS agents in Davis. Defendant is fully aware that subsequent case law does not require police to engage in clarifying questioning in the face of an ambiguous invocation of the right to counsel. But that is not the situation presented in this case. Agents here, were not required to interpret Kuppe's request because it was not equivocal.

by Judge Battani to constitute an unequivocal and unambiguous request for counsel requiring further police questioning to stop.

In *Abela v. Martin*, 380 F.3d 915 (6th Cir. 2004) the defendant stated "maybe I should talk to an attorney by the name of William Evans." The Sixth Circuit distinguished the facts of that case from *Davis* stating that the defendant in *Abela* "did not merely say, maybe I should talk to an attorney," as did the defendant in *Davis*. Rather, the defendant named the specific individual he wanted to speak with. While Kuppe did not name a specific attorney, his request was even less ambiguous than in *Abela*. *Abela* effectively queried out loud "maybe I should talk to an attorney" although he did have a specific name in mind. Kuppe made an assertion, he did not pose a question.

In *Kyger v. Carlton*, 146 F.3d 374, 379 (6th Cir. 1998) the Sixth Circuit explicitly held that the defendant's statement that "I'd just as soon have an attorney" was an unequivocal request for counsel. *Id.* at 379. It further held that subsequent statements by the police were an inappropriate effort at pressuring the defendant to answer, rather than an appropriate attempt to get the defendant to clarify his response. *Id.* In *Kyger*, the following exchange took place during custodial interrogation:

> Q. Alright having them rights in mind would you answer some of our questions without an attorney present?

{H0300309.1}                           15

> A. I'd just soon have a attorney cause, you know, you all saying that there's been a shooting involved and that's a serious charge.
>
> Q. Yes it is but we're investigating. We're not saying you shot anybody, we're just investigating. Now if you have something to hide I could understand you not wanting to sign that. If you ain't got nothing to hide, you know, you'll answer our questions. *Id.* at 377.

The *Kyger* court held that the continuation of questioning after the defendant made an unequivocal request for counsel were inappropriate efforts to pressure him and thus violated his *Miranda* rights. *Id.*

Here, agents went beyond efforts to pressure a waiver from Kuppe, they simply ignored the topic altogether. Chechi never allowed the need for clarification or pressure to arise. It is one thing to claim that law enforcement continued an interrogation in the face of an ambiguous request for counsel, it is quite another to thwart a suspect's attempt to get the very words out. It was as if Kuppe never said the words, "I want a lawyer then."

For these reasons, Kuppe requests this Court to suppress the statements given to police in violation of his Fifth Amendment rights or, in the alternative to conduct an evidentiary hearing at which the government must bear the burden of

establishing the admissibility of the statements.

                Respectfully submitted,

                Hertz Schram PC

                /s/ Walter J. Piszczatowski (P27158)
                Attorney for Defendant Matthew Kuppe
                1760 S. Telegraph Rd., Ste. 300
                Bloomfield Hills, MI 48302-0183
                (248) 335-5000 / fax (248) 335-3346
                wallyp@hertzschram.com

### CERTIFICATE OF SERVICE

    I hereby certify that on February 2, 2016, I electronically filed the foregoing Motion and Memorandum in Support of Motion to Suppress Statements or in the Alternative, for an Evidentiary Hearing with the clerk of the court using the ECF system which will send notification of such filing to the ECF participants.

                Respectfully submitted,

                Hertz Schram PC

                /s/ Walter J. Piszczatowski (P27158)
                Attorney for Defendant Matthew Kuppe
                1760 S. Telegraph Rd., Ste. 300
                Bloomfield Hills, MI 48302-0183
                (248) 335-5000 / fax (248) 335-3346
                wallyp@hertzschram.com